*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *BLUETARP FINANCIAL, INC.,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *Civil No. 08-324-P-S* |
| | ) |
| *EASTERN MATERIALS* | ) |
| *CORPORATION,* | ) |
| | ) |
| *Defendant* | ) |

### *RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT*

In this dispute arising out of defendant Eastern Materials Corporation's ("Eastern's") nonpayment of sums that plaintiff BlueTarp Financial, Inc. ("BlueTarp") contends are due it pursuant to a financing agreement between the parties, Eastern seeks summary judgment on the ground that BlueTarp lacks standing to maintain this action; BlueTarp conversely seeks summary judgment as to its claim of breach of contract against Eastern and Eastern's counterclaims against it, as well as partial summary judgment as to its claimed damages. *See* Defendant's Motion for Summary Judgment ("Defendant's S/J Motion") (Docket No. 46) at 1; Plaintiff BlueTarp's Motion for Summary Judgment ("Plaintiff's S/J Motion") (Docket No. 41) at 1 & 12 n.4. For the reasons that follow, and with the benefit of oral argument held before me on July 20, 2009, I recommend that the court grant BlueTarp's motion and deny that of Eastern.[1]

---

[1] The court denied without prejudice a previous motion by BlueTarp for summary judgment on the ground that, as argued by Eastern, BlueTarp's pre-discovery motion was premature. *See* Order on Motion for Summary Judgment (Docket No. 31).

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment."
*Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003).   "[T]he court must mull each
motion separately, drawing inferences against each movant in turn."   *Id.* (citation omitted); *see
also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross
motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of
summary judgment *per se*.   Cross motions simply require us to determine whether either of the
parties deserves judgment as a matter of law on facts that are not disputed.   As always, we
resolve all factual disputes and any competing, rational inferences in the light most favorable to
the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material
fact exist for purposes of summary judgment is circumscribed by the local rules of this district.
*See* Loc. R. 56.   The moving party must first file a statement of material facts that it claims are
not in dispute.   *See* Loc. R. 56(b).   Each fact must be set forth in a numbered paragraph and
supported by a specific record citation.   *See id.*   The nonmoving party must then submit a
responsive "separate, short, and concise" statement of material facts in which it must "admit,
deny or qualify the facts by reference to each numbered paragraph of the moving party's
statement of material facts[.]"  Loc. R. 56(c).   The nonmovant likewise must support each denial
or qualification with an appropriate record citation.   *See id.*   The nonmoving party may also
submit its own additional statement of material facts that it contends are not in dispute, each
supported by a specific record citation.   *See id.*   The movant then must respond to the nonmoving
party's statement of additional facts, if any, by way of a reply statement of material facts in
which it must "admit, deny or qualify such additional facts by reference to the numbered

3

paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or

qualification must be supported by an appropriate record citation.  *See id.*

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts

contained in a supporting or opposing statement of material facts, if supported by record citations

as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).

In addition, "[t]he court may disregard any statement of fact not supported by a specific citation

to record material properly considered on summary judgment" and has "no independent duty to

search or consider any part of the record not specifically referenced in the parties' separate

statement of fact."  *Id.*; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209,

213-14 (1st Cir. 2008).

## II.  Defendant's S/J Motion

### A.  Factual Background

The parties' statements of material facts, credited to the extent either admitted or

supported by record citations in accordance with Local Rule 56, with disputes in cognizable facts

resolved in favor of the plaintiff as nonmovant, reveal the following relevant facts.

#### 1.  Financing of Eastern's Purchases from Decoplast

In October 2007, Eastern, acting as purchasing agent of its principal, International

Exterior Fabricators, LLC ("IEF"), proposed to purchase a certain exterior wall system known as

EIFS, with a Venetian Plaster finish, from Decoplast, Inc. ("Decoplast").  Defendant Eastern

Materials Corp.'s Statement of Undisputed Material Facts in Support of Motion for Summary

Judgment ("Defendant's SMF") (Docket No. 50) ¶ 1; Plaintiff BlueTarp's Opposition Statement

of Material Facts ("Plaintiff's Opposing SMF") (Docket No. 58) ¶ 1.  The Venetian Plaster finish

was to be placed on the exterior walls of a large shopping center known as the Tanger Outlet at the Arches in Deer Park, New York ("Arches Project").  *Id.* ¶ 2.[2]

Decoplast requested a commercial credit application from Eastern and explained that BlueTarp would evaluate the application for the purpose of determining the limits of Eastern's monthly purchases from Decoplast.  *Id.* ¶ 4.[3]  Eastern submitted the commercial credit application to Decoplast and requested 45-day payment terms.  *Id.* ¶ 5.[4]  Eastern was assigned Decoplast purchase number 188928 for the account.  *Id.* ¶ 6.[5]  Thereafter, Eastern submitted purchase orders to Decoplast for various quantities of Venetian Plaster and related materials for the Arches Project.  *Id.* ¶ 7.

---

[2] I omit paragraph 3, *see* Defendant's SMF ¶ 3, sustaining BlueTarp's objection that it violates the parol evidence rule, *see* Plaintiff's Opposing SMF ¶ 3.  "The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement."  *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 13, 956 A.2d 104, 108 (citation and internal quotation marks omitted).  BlueTarp and Eastern entered into an integrated written agreement.  *See* Commercial Credit Application/BlueTarp Financial Account Agreement ("BlueTarp FAA"), Exh. A to Declaration in Support of Defendant's Motion for Summary Judgment ("Harms Decl./Motion") (Docket No. 49), at 1 ("All provisions contained on this form are incorporated by reference into the BlueTarp Financial Account Agreement on the back page, and you agree to be bound by the BlueTarp Financial Account Agreement in the event your application is approved.  The BlueTarp Financial Account Agreement sets forth additional terms relating to the BlueTarp Purchasing Program.  This application and the BlueTarp Financial Account Agreement constitute the complete agreement between you and BlueTarp Financial, Inc.").  In turn, the BlueTarp FAA provides, "The BlueTarp™ Financial Account ('Account') is issued by and credit is extended by BlueTarp Financial, Inc."  BlueTarp FAA.  Eastern seeks to vary those terms by adducing evidence that BlueTarp agreed merely to administer a trade account agreement between Decoplast and Eastern.  *See* Defendant's SMF ¶ 3.

[3] I overrule BlueTarp's objections that this statement violates the parol evidence rule and relies on citation to an affidavit of a declarant, Ed Harms, who lacks personal knowledge of the matter in issue.  *See* Plaintiff's Opposing SMF ¶ 4.  The statement does not offend the parol evidence rule because it does not contradict, vary, or add to the substance of the parties' integrated agreement.  *See Hemond*, 2008 ME 146, ¶ 13, 956 A.2d at 108.  Harms, Eastern's vice-president of operations, states that he has personal knowledge of the facts and circumstances set forth in his affidavit and indicates that he had direct contact with Decoplast in setting up the BlueTarp account.  *See* Harms Decl./Motion ¶¶ 1, 5-6.

[4] I overrule, for the reasons stated in note 3, above, BlueTarp's objection that declarant Harms lacks personal knowledge of the matter in issue.  *See* Plaintiff's Opposing SMF ¶ 5.  BlueTarp also objects to the statement to the extent that it implies a legal conclusion about the relationship among BlueTarp, EMC, and Decoplast.  The statement, as I have worded it, implies no such legal conclusion.

[5] I omit Eastern's further assertion that the "Decoplast trade account was opened in December 2007," Defendant's SMF ¶ 6, sustaining BlueTarp's objection that the term "Decoplast trade account" states a legal conclusion as to the relationship among BlueTarp, EMC, and Decoplast, *see* Plaintiff's Opposing SMF ¶ 6.  BlueTarp in addition qualifies the statement, asserting that Eastern signed the Commercial Credit Application in October 2007 and started making purchases from Decoplast.  *See id.*; Declaration of Tracey Richardson-Newton ("Richardson-Newton Decl.") (Docket No. 43) ¶¶ 23, 35 & Exh. D thereto.

Beginning on October 30, 2007, Eastern made purchases at Decoplast using its line of credit with BlueTarp.   Statement of Additional Facts ("Plaintiff's Additional SMF"), commencing on page 7 of Plaintiff's Opposing SMF, ¶ 27; Richardson-Newton Decl. ¶ 27.[6] BlueTarp approved all charges made.   Plaintiff's Additional SMF ¶ 28; Richardson-Newton Decl. ¶ 28.  Eastern received Decoplast invoices for the products delivered to the Arches Project. Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8.   Eastern also received monthly billing statements from BlueTarp.  Id. ¶ 9.[7]  The monthly billing statements were as of the 25th day of each month and required payment in full for all of the purchases by the 10th day of the following month.  Id.[8]

## 2.  Failure of Plaster Materials

The Venetian Plaster materials failed shortly after being placed on the walls of the Arches Project and were subsequently removed and replaced by Eastern and IEF throughout the project. Id. ¶ 11.[9]  Upon encountering the Venetian Plaster failures in February 2008, Eastern and IEF stopped making further payments for the materials and demanded that Decoplast correct and

---

[6] Eastern submitted no reply statement of material facts in response to BlueTarp's statement of additional facts.  *See generally* ECF Docket.  BlueTarp's additional facts accordingly are deemed admitted to the extent supported by the citations given.  *See* Loc. R. 56(f).

[7] I omit Eastern's further statement that it received those monthly billing statements "together with a monthly schedule of the Decoplast invoices for the subject pay period[,]" Defendant's SMF ¶ 9, which BlueTarp controverts, *see* Plaintiff's Opposing SMF ¶ 9, viewing the evidence in the light most favorable to BlueTarp as nonmovant.

[8] I overrule BlueTarp's objection that paragraph 9, which relies on the Harms affidavit, violates the best evidence rule because the billing statements speak for themselves.  *See* Plaintiff's Opposing SMF ¶ 9; *see also* Fed. R. Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.").  Harms does not purport to describe the contents of the billing statements.  *See* Harms Decl./Motion ¶ 9.  He avers that his declaration is made on personal knowledge, *see id.* ¶ 1, and he plausibly could have had independent personal knowledge of the billing dates described.  "No evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation."  *R & R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984).

[9] BlueTarp's objection to the extent that paragraph 11 implies that the materials were defective, *see* Plaintiff's Opposing SMF ¶ 11, is overruled.  The statement does not imply that the materials were defective.  BlueTarp qualifies the statement, asserting that Decoplast contends that the materials were not defective but had to be removed due to misapplication.  *Id.*; Exh. B to Harms Decl./Motion.

remedy the problem.  Defendant's SMF ¶ 12; Harms Decl./Motion ¶ 12 & Exh. B thereto.[10]  IEF also demanded that Decoplast and BlueTarp credit it with prior payments for the materials and requested reimbursement for additional costs incurred in repairing and replacing the materials. Defendant's SMF ¶ 13; Harms Decl./Motion ¶ 13.[11]  Decoplast and BlueTarp refused these requests.  Defendant's SMF ¶¶ 14-15; Harms Decl./Motion ¶¶ 14-15.[12]

In September 2008, IEF commenced an action against Decoplast in the New York State Supreme Court, County of Nassau, alleging that Decoplast had provided defective materials, causing more than $3 million in damages.  Defendant's SMF ¶ 16; Plaintiff's Opposing SMF ¶ 16.[13]

### 3.  BlueTarp's Invocation of Its Right To Return Eastern Account

A Purchase Card Agreement between Decoplast and BlueTarp provides, in relevant part, as follows:

Account Returns

The term "Account Return" refers to reducing the dealer reimbursement, debiting of the dealer's account or withholding of settlement funds for all or part of the amount of a particular transaction.  There may be an account return if there is reason to believe that any of the items on the following list exists:

---

[10] My recitation takes into account BlueTarp's objections, which I sustain, that Eastern states a legal conclusion in asserting that it and IEF "revoked their acceptance of the defective materials[,]" Defendant's SMF ¶ 12, and that Harms is not designated as an expert and is not qualified to testify that the materials were defective, *see* Plaintiff's Opposing SMF ¶ 12.

[11] My recitation takes into account BlueTarp's objection, which I sustain, that Harms is not designated as an expert and is not qualified to testify that the materials were defective.  *See* Plaintiff's Opposing SMF ¶ 14.  BlueTarp in addition qualifies the statement, asserting that Decoplast did not repair or replace the failing plaster or reimburse Eastern for any alleged damages but instead alleged that the failings were due to misapplication.  *See id.*; Exh. B to Harms Decl./Motion.

[12] My recitation takes into account BlueTarp's objections, which I sustain, that Harms is not designated as an expert and is not qualified to testify that the materials were defective, *see* Plaintiff's Opposing SMF ¶¶ 14-15.

[13] My recitation takes into account BlueTarp's objection, which I sustain, that Harms is not designated as an expert and is not qualified to testify that the materials were defective.  *See* Plaintiff's Opposing SMF ¶ 16.  I omit paragraphs 17 through 19, *see* Defendant's SMF ¶¶ 17-19, which BlueTarp controverts, *see* Plaintiff's Opposing SMF ¶¶ 17-19, viewing the evidence in the light most favorable to BlueTarp as nonmovant.  I also omit paragraph 20, *see* Defendant's SMF ¶ 20, sustaining BlueTarp's objection that it sets forth a legal conclusion and is unsupported by the citations given, *see* Plaintiff's Opposing SMF ¶ 20.

- Cardholder never received merchandise or service being billed.
- Cardholder was never credited for returned merchandise or a cancelled order.
- Dealer has failed to provide copy of invoice(s), packing slip and/or proof of delivery requested by BlueTarp within three (3) days.
- Transaction is unauthorized, counterfeit or fraudulent or does not represent a bona fide transaction in the ordinary course of dealer business, or is subject to any claim of illegality, negligence or dishonesty.
- Warranty and service disputes. (A notice will be sent before any action will be taken. If the problem has not been resolved within two weeks then it will result in an account return to the dealer.)
- You [Decoplast] breached any warranty under your Agreement with us with respect to the transaction.

*Id*. ¶ 21.[14]  The BlueTarp Operating Procedures Manual is a part of the agreement between BlueTarp and Decoplast.  *Id*. ¶ 22.

As a result of the ongoing dispute as to the Venetian Plaster materials, BlueTarp returned Eastern's account to Decoplast and demanded that Decoplast immediately pay BlueTarp the account balance of $161,375.35.  *Id*. ¶ 23.[15]  Specifically, by letter dated September 17, 2008, BlueTarp notified Decoplast:

> I am writing regarding the outstanding balance of Eastern Materials Corp., which remains unpaid and delinquent as a result of ongoing disputes with Deco Plast over defective materials, warranty and service issues dating back prior to June 18, 2008.
>
> Under the terms of the Corporate Guarantee, Credit Services Agreement, Enrollment Form and Operating Procedures Manual BlueTarp reserves the right to chargeback a sale when an account holder disputes a transaction(s) and/or material without resolution. While we have made every effort to mediate and provide appropriate intervention, the situation with Eastern Materials remains unresolved.

---

[14] My recitation incorporates BlueTarp's nomenclature for the contract in issue.  *See* Plaintiff's Opposing SMF ¶ 21.

[15] I overrule BlueTarp's objection, *see* Plaintiff's Opposing SMF ¶ 23, that Eastern's reliance on citation to testimony of BlueTarp's Tracey Richardson-Newton violates the best evidence rule. Richardson-Newton does not purport to describe the contents of a writing and plausibly had independent personal knowledge of the event described. *See* Deposition of Tracey Richardson-Newton ("Richardson-Newton Dep."), Exh. H to Harms Decl./Motion, at 31-32, 72; *Visual Scene*, 726 F.2d at 38. BlueTarp in addition qualifies the statement, *see* Plaintiff's Opposing SMF ¶ 23, but the substance of its qualification is set forth elsewhere in this factual recitation.

> At this time it is necessary for BlueTarp Financial to chargeback the account
> balance to Deco Plast for the principal balance of $418,275.80.  BlueTarp has
> offset settlements previously withheld from Deco Plast in the amount of
> $256,900.45 and requests immediate payment of $161,375.35 from Deco Plast.

Defendant's SMF ¶ 24; Exh. D to Harms Decl./Motion[16]  A "chargeback" is "a return of the

transactions to the dealer" and reimbursement by the dealer (*i.e.*, Decoplast) for any monies that

were given by BlueTarp to the dealer.  Defendant's SMF ¶ 24 n.1; Richardson-Newton Dep. at

130-31.[17]

    In fact, BlueTarp's Purchase Card Agreement with Decoplast specifically requires

Decoplast to

> reimburse BlueTarp upon demand all amounts previously paid to Dealer with
> respect to any Card Sale as to which (i) there shall have been any material breach
> by Dealer, its employee(s) or agents of any term, representation, condition or
> warranty set forth in this Agreement and such breach is not subject to cure or is
> not cured within ten (10) days of notice of such from BlueTarp, or (ii) the
> Cardholder or any other person obligated for payment has asserted a defense,
> claim or offset against payment based upon (A) any act, omission or alleged
> wrongful conduct of Dealer or any employee or agent of Dealer, (B) any other
> defense, claim or offset against payment based on the quality or sufficiency of
> Products which relate to such Card Sale[.]

Defendant's SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26.

### 4.  Sums BlueTarp Seeks From Eastern

    Eastern charged $1,016,402.70 of goods at Decoplast.  Plaintiff's Additional SMF ¶ 29;

Richardson-Newton Decl. ¶ 35.  Under its contract with Decoplast, BlueTarp is required to make

periodic payment of charges made by customers on their BlueTarp accounts less the applicable

discount fee.  Plaintiff's Additional SMF ¶ 34; Exh. G to Harms Decl./Motion at [12], ¶ 4.

---

[16] My recitation corrects a typographical error noted by BlueTarp.  *See* Plaintiff's Opposing SMF ¶ 24.
[17] I omit paragraph 25, *see* Defendant's SMF ¶ 25, sustaining BlueTarp's objection that it is not supported by the record citation because Richardson-Newton was testifying about a general practice, not application of that general practice to Decoplast, *see* Plaintiff's Opposing SMF ¶ 25.  BlueTarp in any event alternatively controverts the statement, *id.*, and I view the evidence in the light most favorable to BlueTarp as nonmovant.

BlueTarp advanced monies to Decoplast for $766,244.14 of the total charges by Eastern. Plaintiff's Additional SMF ¶ 30; Richardson-Newton Decl. ¶ 36.   Eastern paid BlueTarp $598,126.90.  Plaintiff's Additional SMF ¶ 31; Richardson-Newton Decl. ¶ 37.  Eastern has not paid BlueTarp for $168,117.24 in charges for which BlueTarp has paid Decoplast.  Plaintiff's Additional SMF ¶ 32; Richardson-Newton Decl. ¶ 38.  As of May 20, 2009, finance charges on $168,117.24 from the June 9, 2008, due date at 1.5 percent per month were $28,602.96. Plaintiff's Additional SMF ¶ 33; Richardson-Newton Decl. ¶ 39.

### B.  Discussion

Eastern seeks summary judgment as to BlueTarp's claims against it on the basis that BlueTarp lacks standing to maintain the instant action.  *See* Defendant's S/J Motion at 1.

### 1.  Elements of Article III Standing

"The Supreme Court has outlined a three-part test for Article III standing[.]"  *Council of Ins. Agents & Brokers v. Juarbe-Jiménez*, 443 F.3d 103, 107 (1st Cir. 2006).  "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id*. (citation and internal punctuation omitted).  "Second, there must be a causal connection between the injury and the conduct complained of; in other words, the injury must be fairly traceable to the defendant's challenged action rather than to some third party's independent action."  *Id.* at 108 (citation and internal quotation marks omitted).   "And third, it must be likely that a favorable decision will redress the injury."  *Id*.

Eastern contends that BlueTarp lacks standing because it exercised its right pursuant to its agreement with Decoplast to "chargeback" and return Eastern's entire sales account to Decoplast and to seek reimbursement from Decoplast of all monies advanced by BlueTarp with

respect to the disputed materials.  *See* Defendant's S/J Motion at 3-4.  Eastern asserts that BlueTarp retained no rights to or interest in the returned Eastern account.  *See id.* at 4.  Accordingly, in Eastern's view, BlueTarp fails to meet constitutional standing requirements.  *See id.* at 6.[18]

BlueTarp counters that, for two independent reasons, this argument fails: that (i) the assignment was contingent on Decoplast repaying BlueTarp, which Decoplast never did, and (ii) the assignment in any event was partial.  *See* Plaintiff BlueTarp's Opposition to EMC's Motion for Summary Judgment ("Plaintiff's S/J Opposition") (Docket No. 57) at 1-2.  With respect to the latter point, BlueTarp reasons that, even if Decoplast repaid BlueTarp for all amounts previously paid and thus satisfied the contingency, BlueTarp still would be injured because it would not have received the full amount of the Eastern charges or interest on those charges to which it is entitled under its contract with Eastern.  *See id.* at 2.

### 2.  BlueTarp's Case for Meeting Standing Requisites

As BlueTarp asserts, *see id.*, even assuming *arguendo* that the Eastern account was successfully charged back to Decoplast, it retains standing to bring the instant action.  This is so because:

     1.      BlueTarp provided a line of credit to Eastern for its Decoplast purchases.  *See* Plaintiff's Additional SMF ¶ 27; Richardson-Newton Decl. ¶ 27.

---

[18] At oral argument, Eastern's counsel also placed considerable emphasis on a contention that Eastern never became bound by the terms of the BlueTarp FAA because it never used a BlueTarp credit card or access device and never was assigned a BlueTarp account number, thereby failing to satisfy a prerequisite to applicability of the BlueTarp FAA.  As counsel for BlueTarp rejoined at oral argument, Eastern failed to include this point in its briefs supporting summary judgment, *see* Defendant's S/J Motion; Defendant's S/J Reply, and hence waived it, *see, e.g., United States v. Pulido*, 566 F.3d 52, 60 n.4 (1st Cir. 2009) ("[E]xcept in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived.") (citations and internal quotation marks omitted).

2.      BlueTarp billed Eastern monthly.  *See* Defendant's SMF ¶ 9; Plaintiff's Opposing SMF ¶ 9.

3.      Under BlueTarp's contract with Decoplast, BlueTarp was required to make periodic payment of charges made by customers on their BlueTarp accounts less the applicable discount fee.  *See* Plaintiff's Additional SMF ¶ 34; Exh. G to Harms Decl./Motion at [12], ¶ 4.

4.      Eastern has not paid BlueTarp for $168,117.24 in charges for which BlueTarp has paid Decoplast.  *See* Plaintiff's Additional SMF ¶ 32; Richardson-Newton Decl. ¶ 38.

5.      As of May 20, 2009, finance charges on $168,117.24 from the June 9, 2008, due date at 1.5 percent per month were $28,602.96.  *See* Plaintiff's Additional SMF ¶ 33; Richardson-Newton Decl. ¶ 39.

Therefore, even if (i) BlueTarp had recouped the full $161,375.35 demanded of Decoplast pursuant to its agreements with that entity, and (ii) that amount were offset against sums that BlueTarp otherwise demands of Eastern, BlueTarp would continue to have a claim against Eastern for the balance of $35,344.85 as of May 20, 2009, plus finance charges accruing thereafter.[19]

BlueTarp accordingly demonstrates that it meets the three requisites of Article III standing, namely, that it suffered a concrete invasion of a legally protected interest, that is, its right to payment on its line of credit with Eastern, that its injury is fairly traceable to Eastern's nonpayment, and that a favorable decision would redress that injury.  *See Juarbe-Jiménez*, 443 F.3d at 107-08.  Eastern accordingly falls short of demonstrating entitlement to summary judgment as to BlueTarp's claims against it on the ground of BlueTarp's lack of standing.

---

[19] This figure is obtained by adding $6,741.89, which represents the difference between the $161,375.35 demanded of Decoplast and the $168,117.24 claimed to be owed by Eastern, to the accrued finance charges of $28,602.96.  The $6,741.89 difference represents BlueTarp's profit, or "discount fee," on the transaction.  *See* Plaintiff's S/J Opposition at 6.

### III.  Plaintiff's S/J Motion

### A.  Factual Background

The parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, with disputes in cognizable facts resolved in favor of the defendant as nonmovant, reveal the following relevant facts.

### 1.  BlueTarp's Business System

BlueTarp provides commercial credit to the construction industry.  Plaintiff BlueTarp's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 42) ¶ 1; Richardson-Newton Decl. ¶ 2.[20]

A new customer who wishes to seek a line of credit from BlueTarp begins the process by submitting a credit application, titled the Financial Account Agreement.  Plaintiff's SMF ¶ 2; Richardson-Newton Decl. ¶ 3.  The customer can return the completed credit application to the dealer, who in turn forwards it to BlueTarp, or the customer can fax or mail the application directly to BlueTarp.  Plaintiff's SMF ¶ 3; Richardson-Newton Decl. ¶ 4.

When BlueTarp receives a credit application, regardless of how it receives it, it evaluates the customer and determines whether to extend credit and in what amount.  Plaintiff's SMF ¶ 4; Richardson-Newton Decl. ¶ 5.  If BlueTarp decides to extend credit to a particular customer, it sends a package of materials directly to the customer explaining that credit has been approved and identifying the credit line of its BlueTarp account.  Plaintiff's SMF ¶ 5; Richardson-Newton Decl. ¶ 6.  When BlueTarp approves a new customer, it creates an account number specific to the

---

[20] Eastern purports to deny this statement as well as others addressing BlueTarp's general business system, *see* Plaintiff's SMF ¶¶ 1-14, but does so on the basis of assertions regarding its relationship with BlueTarp, discussed below, rather than BlueTarp's business generally, *see* Defendant Eastern's Opposing Statement of Material Facts in Opposition to Motion for Summary Judgment ("Defendant's Opposing SMF") (Docket No. 54) ¶¶ 1-14.  Thus, it does not effectively controvert these statements insofar as they concern BlueTarp's general business system.

customer.  Plaintiff's SMF ¶ 6; Richardson-Newton Decl. ¶ 7.  BlueTarp provides this account number to the customer for use at any approved dealers.  Plaintiff's SMF ¶ 7; Richardson-Newton Decl. ¶ 8.

BlueTarp also informs the customer's primary dealer that the particular customer has been given a BlueTarp credit line.  Plaintiff's SMF ¶ 8; Richardson-Newton Decl. ¶ 9.  An approved customer uses its credit line by telling any approved dealer that the customer wishes to make a particular purchase on its BlueTarp credit account.  Plaintiff's SMF ¶ 9; Richardson-Newton Decl. ¶ 10.  The dealer then makes a point of sale charge electronically notifying BlueTarp that the customer wishes to make a purchase of a certain amount on its BlueTarp credit account.  Plaintiff's SMF ¶ 10; Richardson-Newton Decl. ¶ 11.  If the customer's account is in good standing and there is a sufficient credit line for the purchase, BlueTarp electronically approves the point of sale charge.  Plaintiff's SMF ¶ 11; Richardson-Newton Decl. ¶ 12.

Periodically, typically each month, BlueTarp sends the customer a billing statement identifying all amounts charged by the customer at one or more dealers during the particular time period.  Plaintiff's SMF ¶ 12; Richardson-Newton Decl. ¶ 13.  The customer then has a set period of time in which to pay BlueTarp for amounts charged by the customer.  Plaintiff's SMF ¶ 13; Richardson-Newton Decl. ¶ 14.  Also periodically, though not necessarily in the same period as the customer is billed, BlueTarp "settles" with the dealer, that is, forwards to the dealer the amount of charges made by customers less the discount fee agreed to by the dealer and BlueTarp.  Plaintiff's SMF ¶ 14; Richardson-Newton Decl. ¶ 15.

## 2.  The Old BlueTarp System

Prior to January 2007, BlueTarp had a different business model.  Plaintiff's SMF ¶ 15;

14

Richardson-Newton Decl. ¶ 16.[21]   Although BlueTarp then, as now, facilitated purchases of construction materials from dealers, it did so by purchasing accounts receivable from dealers at a discount and thus taking an assignment of the receivable.   Plaintiff's SMF ¶ 16; Richardson-Newton Decl. ¶ 17.

In January 2007, BlueTarp changed from this purchase-of-accounts-receivable arrangement to the current credit arrangement to eliminate two troublesome difficulties with taking an assignment of accounts receivable: (i) the debtor's ability to assert defenses arising out of its relationship with the dealer and (ii) the fact that the assignment is taken subject to certain claims of third parties, such as banks, on the dealer's assets.   Plaintiff's SMF ¶ 17; Richardson-Newton Decl. ¶ 18.

To create this new arrangement, BlueTarp entered into written contractual relationships with its customers.   Plaintiff's SMF ¶ 18; Richardson-Newton Decl. ¶ 19.   The Financial Account Agreements provide that "credit is extended by BlueTarp" and that "BlueTarp Financial, Inc. neither sells nor warrant the goods[.]"  Plaintiff's SMF ¶ 19; Richardson-Newton Decl. ¶ 20 & Exh. A thereto at 2.

BlueTarp also made certain amendments to its contracts with its dealers to reflect that BlueTarp was no longer purchasing accounts receivable but instead was issuing credit directly to its customers.   Plaintiff's SMF ¶ 20; Richardson-Newton Decl. ¶ 21.[22]

---

[21] Eastern purports to deny this statement as well as others addressing BlueTarp's so-called old BlueTarp system, *see* Plaintiff's SMF ¶¶ 15-20, but does so on the basis of assertions regarding its relationship with BlueTarp, discussed below, rather than BlueTarp's old business system generally, *see* Defendant's Opposing SMF ¶¶ 15-20. Thus, it does not effectively controvert these statements insofar as they concern BlueTarp's old BlueTarp system generally.

[22] I omit paragraph 21, *see* Plaintiff's SMF ¶ 21, which is not supported by the citations given.

### 3.  The Eastern Account

On October 17, 2007, Decoplast emailed a document titled "Commercial Credit Application," with a revision date of September 12, 2006, to Eastern, stating: "Attached is the credit application for Decoplast Distributors." Plaintiff's SMF ¶ 22; Exh. 1 to *id*.[23]  On October 22, 2007, Eastern completed the Commercial Credit Application.  Plaintiff's SMF ¶ 23; Richardson-Newton Decl. ¶ 23 & Exh. D thereto.  Eastern submitted the completed Commercial Credit Application to Decoplast.  Plaintiff's SMF ¶ 24; Deposition of Brad Dale ("Dale Dep."), Exh. 2 to *id*., at 31.  On October 22, 2007, Decoplast forwarded the completed Commercial Credit Application to BlueTarp.  Plaintiff's SMF ¶ 25; Richardson-Newton Decl. ¶ 24.

The BlueTarp FAA provides that the "BlueTarp™ Financial Account ('Account') is issued by and credit is extended by BlueTarp Financial, Inc."  Plaintiff's SMF ¶ 26; Exh. D to Richardson-Newton Decl. at 2.  The Commercial Credit Application provides, "This application and the BlueTarp Financial Account Agreement constitute the complete agreement between you [Eastern] and BlueTarp Financial, Inc."  Plaintiff's SMF ¶ 27; Exh. D to Richardson-Newton Decl. at 1.[24]

---

[23] My recitation of paragraphs 22 through 25 substitutes the term "Commercial Credit Application" for BlueTarp's term, "Financial Account Agreement."  *See* Plaintiff's SMF ¶¶ 22-25.  Eastern purports to deny these paragraphs, as well as paragraph 26, on the bases that (i) the document in question is a "Decoplast Commercial Credit Application" and (ii) Eastern never accepted the BlueTarp FAA that appears on the back side of that form because acceptance was expressly conditioned on its use of a BlueTarp financial card or access device, which never occurred.  *See* Defendant's Opposing SMF ¶¶ 22-26.  After careful examination of the underlying document, I conclude that the proper title of the application contained on the front page is "Commercial Credit Application."  *See* Exh. D to Richardson-Newton Decl. at 1.  Although a Decoplast logo appears to the left of the words "Commercial Credit Application," a smaller BlueTarp logo appears to the right.  *See id.*  BlueTarp's assertion that it never accepted the BlueTarp FAA constitutes a legal argument rather than a statement of fact.  In any event, in so arguing, BlueTarp relies on an unfair characterization of the document, which states: "Your use of the BlueTarp Financial Account constitutes acceptance of the following terms and conditions.  Use includes the retention or use of the Account by the person named on the BlueTarp Financial card or access device or anyone under your control, including your employees."  Exh. D to Richardson-Newton Decl. at 2.  Thus, any use of the account, including but not limited to use by card or access device, sufficed to constitute acceptance of the BlueTarp FAA terms and conditions.

[24] Eastern purports to deny this statement as well as paragraphs 31 and 32, and to qualify paragraphs 28 through 30, on the basis that that it did not enter into any credit agreement with BlueTarp and completed and submitted a
*(continued on next page)*

The BlueTarp FAA provides that a "credit line will be assigned to your Account.  This line includes all unpaid purchases, whether billed or unbilled."  Plaintiff's SMF ¶ 28; Exh. D to Richardson-Newton Decl. at 2.  The BlueTarp FAA also provides that "[a]ccounts are closed on the 25th of the month[,]" that "payment is due on the 10th day of the following month[,]" and that "[d]elinquent balances will be assessed a finance charge of 1.5% per billing period and a $29.00 late fee[.]"  Plaintiff's SMF ¶ 29; Exh. D to Richardson-Newton Decl. at 2.  The BlueTarp FAA also states, "BlueTarp Financial, Inc. neither sells nor warrants the goods or services obtained from merchants accepting BlueTarp Financial."  Plaintiff's SMF ¶ 30; Exh. D to Richardson-Newton Decl. at 2.

The BlueTarp FAA further provides that "[i]n the event that [Eastern] breach[es] or default[s] under the terms of this Agreement, [it] will be liable to BlueTarp Financial for all costs and expenses, including late charges and fees and reasonable attorney fees or other costs of collection[.]"  Plaintiff's SMF ¶ 31; Exh. D to Richardson-Newton Decl. at 2.  Nothing in the BlueTarp FAA makes Eastern's obligation to make payments of all unpaid charges contingent on

---

Decoplast credit application to Decoplast solely for the purpose of opening a trade account with Decoplast.  *See* Defendant's Opposing SMF ¶¶ 27-32 (citing Declaration in Opposition to Defendant's Motion for Summary Judgment ("Harms Decl./Opposition"), attached to *id.*, ¶¶ 6-7).  As BlueTarp argues, *see* Plaintiff's S/J Motion at 2; BlueTarp's Reply on Its Motion for Summary Judgment ("Plaintiff's S/J Reply") (Docket No. 59) at 2-4, Harms' testimony concerning Eastern's intentions and negotiations leading to execution of the parties' agreement is barred by the parol evidence rule, *see Hemond*, 2008 ME 146, ¶ 13, 956 A.2d at 108 ("The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement.") (citation and internal quotation marks omitted); *see also, e.g., Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 180 (1st Cir. 1995) ("In the most permissive of jurisdictions, extrinsic evidence will be considered for the purpose of determining whether an ambiguity exists only if it suggests a meaning to which the challenged language is reasonably susceptible.  In no event may extrinsic evidence be employed to contradict explicit contract language or to drain an agreement's text of all content save ink and paper.") (citations omitted).  The evidence in question is barred because, (i) as explained in my "Discussion" section, below, the parties entered into an integrated written agreement, and Eastern has not explained how any exception to the parol evidence rule applies, (ii) the parties' agreement provided that BlueTarp extended a "line of credit" to Eastern, *see* Exh. D to Richardson-Newton Decl. at 2, and (iii) Eastern attempts to introduce this evidence to demonstrate, in clear variance with the terms of that agreement, that it did not have a line of credit from BlueTarp but rather opened a trade account with Decoplast that BlueTarp merely administered.

the goods being of a certain quality.  Plaintiff's SMF ¶ 32; Exh. D to Richardson-Newton Decl. at 2.

BlueTarp approved Eastern's line of credit on October 24, 2007.  Plaintiff's SMF ¶ 33; Richardson-Newton Decl. ¶ 25.[25]  BlueTarp later extended Eastern's payment plan to 45 days. Plaintiff's SMF ¶ 34; Richardson-Newton Decl. ¶ 26.[26]  Beginning on October 30, 2007, Eastern made purchases at Decoplast using its line of credit with BlueTarp.  Plaintiff's SMF ¶ 35; Richardson-Newton Decl. ¶ 27.[27]  BlueTarp approved all charges made.  Plaintiff's SMF ¶ 36; Richardson-Newton Decl. ¶ 28.

On the 25th of each month beginning on November 25, 2007, BlueTarp sent a billing statement to Eastern detailing the amounts charged by Eastern on the BlueTarp account and the amounts due from Eastern to BlueTarp.  Plaintiff's SMF ¶ 37; Richardson-Newton Decl. ¶ 29 & Exh. E thereto.[28]  In a section titled "Credit Line," those statements identified, among other

---

[25] Eastern purports to deny this statement on the basis of Harms' testimony concerning conversations with Decoplast and BlueTarp advising that a trade account had been opened with Decoplast and that BlueTarp merely would administer the account.  *See* Defendant's Opposing SMF ¶ 33 (citing Harms Decl./Opposition ¶¶ 5-6, 8-9).  For reasons discussed in note 24, above, this is inadmissible parol evidence.

[26] Eastern purports to deny this statement on the basis of Harms' testimony that Decoplast, rather than BlueTarp, extended the line of credit.  *See* Defendant's Opposing SMF ¶ 34 (citing Harms Decl./Opposition ¶ 7).  Evidence of a course of dealing is a form of extrinsic evidence subject to the parol evidence rule.  *See, e.g., United States v. Ford Motor Co.*, 463 F.3d 1267, 1278 (Fed. Cir. 2006).  For reasons discussed in note 24 above, this is inadmissible parol evidence.

[27] Eastern purports to deny this statement, as well as paragraph 36, on the basis of Harms' testimony indicating that Eastern made purchases from Decoplast "on its open trade account with Decoplast."  Defendant's Opposing SMF ¶¶ 35-36 (citing Harms Decl./Opposition ¶¶ 9, 14).  For the reasons discussed in note 24, above, this is inadmissible parol evidence.

[28] Eastern purports to deny this statement on the bases that (i) the monthly billing statements furnished by BlueTarp list Decoplast sales invoices and credits, and (ii) Eastern was advised by BlueTarp, *via* a welcome letter, rewards pamphlet, and conversations, that BlueTarp would collect and process payments due on Decoplast's open trade account.  *See* Defendant's Opposing SMF ¶ 37 (citing Exhs. E, H to Richardson-Newton Decl.; Harms Decl./Opposition ¶¶ 11, 13-14).  BlueTarp's practice of listing Decoplast invoice numbers on its monthly billing statements, as well as the contents of the referenced welcome letter and rewards pamphlet, cannot reasonably be construed as inconsistent with the extension by BlueTarp of a line of credit to Eastern.  *See* Exhs. E, H to Richardson-Newton Decl.  In any event, to the extent that Eastern offers these materials, as well as Harms' testimony, to vary or contradict the terms of the BlueTarp FAA, they are, for reasons discussed in note 24, above, inadmissible parol evidence.

things, the current "Credit Limit," "Account Balance," and "Available Credit."  Plaintiff's SMF

¶ 38; Exh. E to Richardson-Newton Decl.[29]

     For six months, Eastern made purchases, received bills from BlueTarp, and paid

BlueTarp more than $500,000 by check made out to BlueTarp and sent directly to BlueTarp.

Plaintiff's SMF ¶ 39; Richardson-Newton Decl. ¶ 30 & Exhs. E-F thereto.[30]  Eastern did not

make its payment due on June 9, 2008.  Plaintiff's SMF ¶ 40; Richardson-Newton Decl. ¶ 31.

BlueTarp made its settlement payment to Decoplast on June 9, 2008.  Plaintiff's SMF ¶ 41;

Richardson-Newton Decl. ¶ 32. On June 18, 2008, Eastern notified BlueTarp that the materials

that it had received from Decoplast were defective and that it believed that Decoplast had

committed fraud.  Plaintiff's SMF ¶ 42; Richardson-Newton Decl. ¶ 33.[31]  On June 20, 2008,

BlueTarp notified Decoplast that, because Eastern was disputing the quality of the goods

received, BlueTarp would withhold future settlements.   Plaintiff's SMF ¶ 43; Defendant's

Opposing SMF ¶ 43.[32]

---

[29] Eastern purports to qualify this statement, *see* Defendant's Opposing SMF ¶ 38, but again relies on testimony offered to contradict the terms of the parties' written agreement.  For reasons discussed in note 24, above, this is inadmissible parol evidence.

[30] Eastern purports to deny this statement, *see* Defendant's Opposing SMF ¶ 39, but again relies on evidence offered to contradict the terms of the parties' written agreement.  For reasons discussed in note 24, above, this is inadmissible parol evidence.

[31] Eastern purports to deny paragraphs 40 through 42, but its assertions do not controvert them.  *See* Defendant's Opposing SMF ¶¶ 40-42.  In addition, Eastern's first sentence purportedly denying these paragraphs is not supported by the citation given.

[32] Eastern qualifies this statement, asserting that in its June 20, 2008, letter to Decoplast, BlueTarp also acknowledged that the prior unresolved issues concerning Decoplast's defective materials, which had first arisen in January 2008, were ongoing and remained unresolved.  *See* Defendant's Opposing SMF ¶ 43; Exh. G to Richardson-Newton Decl.  Eastern adds that BlueTarp's internal tracking system indicates that, beginning on February 22, 2008, BlueTarp placed the Decoplast account on "dispute status," and on March 6, 2008, Eastern advised BlueTarp that the damages and costs arising from Decoplast's failed products could exceed $225,000.  *See* Defendant's Opposing SMF ¶ 43; Exh. 2 to Harms Decl./Opposition, entry of March 6, 2008, at 9:04.

Eastern has charged $1,016,402.70 of goods at Decoplast.   Plaintiff's SMF ¶ 44; Richardson-Newton Decl. ¶ 35.[33]   BlueTarp has advanced monies to Decoplast for $766,244.14 of the total charges by Eastern.  Plaintiff's SMF ¶ 45; Richardson-Newton Decl. ¶ 36.[34]   Eastern has paid BlueTarp $598,126.90.   Plaintiff's SMF ¶ 46; Richardson-Newton Decl. ¶ 37.   Eastern has not paid BlueTarp for $168,117.24 in charges for which BlueTarp has paid Decoplast. Plaintiff's SMF ¶ 47; Richardson-Newton Decl. ¶ 38.  As of May 20, 2009, finance charges on that amount from the June 9, 2008, due date at 1.5 percent per month are $28,602.96.  Plaintiff's SMF ¶ 48; Richardson-Newton Decl. ¶ 39.

BlueTarp initially approved Eastern for a $100,000 credit line.   Plaintiff's SMF ¶ 49; Richardson-Newton Decl. ¶ 40 & Exh. H thereto.  In late 2007, Eastern sought an additional $150,000 of credit by sending to BlueTarp a job commencement form.   Plaintiff's SMF ¶ 50; Richardson-Newton Decl. ¶ 41 & Exh. I thereto.   On or about February 4, 2008, BlueTarp approved the request for additional credit, creating another $150,000 credit line, subject to the provision of a corporate guarantee from Eastern's parent company, Island International Industries, Inc. ("Island").  Plaintiff's SMF ¶ 51; Richardson-Newton Decl. ¶ 42.  On February 4, 2008, Island provided the requested corporate guaranty to BlueTarp.   Plaintiff's SMF ¶ 52; Defendant's Opposing SMF ¶ 52.   On March 26, 2008, BlueTarp again increased Eastern's

---

[33] Eastern purports to deny this statement on the basis of evidence that it purchased goods on an open trade account with Decoplast rather than charging purchases to a BlueTarp account.  *See* Defendant's Opposing SMF ¶ 44.  For reasons discussed in note 24, above, this is inadmissible parol evidence.

[34] Eastern purports to deny this statement, as well as paragraphs 46 through 51 and 53, on the basis of citation to evidence that is offered to vary or contradict the terms of the parties' written agreement, including evidence concerning a separate agreement between Decoplast and BlueTarp pursuant to which BlueTarp assertedly remitted funds to Decoplast not for "charges" made by Eastern, but rather to purchase Decoplast's Eastern accounts receivable.  *See* Defendant's Opposing SMF ¶¶ 45-51, 53.  For reasons discussed in note 24, above, and in the "Discussion" section, below, this is inadmissible parol evidence.

credit line at Eastern's request to $422,915.24.  Plaintiff's SMF ¶ 53; Richardson-Newton Decl. ¶ 44.[35]

## B.  Discussion

BlueTarp moves for summary judgment in its favor as to its sole claim against Eastern, for breach of contract, and Eastern's counterclaims against it.  *See* Plaintiff's S/J Motion at 1, 13; Complaint (Docket No. 1) ¶¶ 21-24.  It also seeks partial summary judgment as to damages.  *See* Plaintiff's S/J Motion at 1, 12 n.4.  Eastern brings six counterclaims, which BlueTarp reasonably construes as asserting claims for fraudulent misrepresentation, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of contract, and breach of express warranty under 11 M.R.S.A. § 2-313, all predicated on Decoplast's sale of assertedly defective plaster.  *See id.* at 9, 12; Counterclaims, commencing on page 6 of Answer (Docket No. 12), ¶¶ 32-64; Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's S/J Opposition") (Docket No. 56) at 2.

---

[35] I omit paragraphs 54 through 57, *see* Plaintiff's SMF ¶¶ 54-57, which Eastern denies, *see* Defendant's Opposing SMF ¶¶ 54-57, viewing the evidence in the light most favorable to Eastern as nonmovant.  In paragraphs 54 through 57, BlueTarp contends that, between 2004 and 2007, it made certain changes to its standard Purchase Card Agreement with dealers, including changing the name of the agreement to the Purchase Account Agreement.  *See* Plaintiff's SMF ¶¶ 54-56.  It adds that, although a notice of amendment that it sent in January 2007 used the term "Purchase Account Agreement," the notice amended both Purchase Account Agreements and Purchase Card Agreements, whichever a dealer happened to have.  *See id.* ¶ 57.  Eastern's assertion that "BlueTarp concedes that there is no written document that amends it[s] Purchase Card Agreement with Decoplast[,]" Defendant's Opposing SMF ¶¶ 54-55, is not supported by the citations given and is not well-taken, *see* Richardson-Newton Dep., Exh. 4 to Harms Decl./Opposition, at 36-47, 90, 128-35.  Nonetheless, Eastern points to evidence that (i) BlueTarp has produced no written document changing the name of its agreement with Decoplast from a Purchase Card Agreement to a Purchase Account Agreement, *see* Defendant's Opposing SMF ¶ 56; Richardson-Newton Dep. at 36-38, (ii) BlueTarp has produced no written notification of an amendment to the Decoplast Purchase Card Agreement, but only a document titled "Amendment to Purchase Account Agreement" dated January 26, 2007, *see* Defendant's Opposing SMF ¶ 57; Richardson-Newton Dep. at 39; Exh. C to Richardson-Newton Decl.; and (iii) the amendment does not reference all of the provisions of the Purchase Card Agreement dealing with assignment of accounts, *see* Defendant's Opposing SMF ¶ 57; *compare* Exh. C to Richardson-Newton Decl. *with* Exh. 7 to Harms Decl./Opposition, at [11]-[12], ¶ 3.

### 1.  The Parties' Arguments

Eastern seeks to avoid summary judgment on BlueTarp's claim, as well as its counterclaims against BlueTarp,[36] on the bases that:

1.      The Purchase Card Agreement between BlueTarp and Decoplast expressly provides that BlueTarp is an assignee with respect to the account in issue.  *See id*. at 5.[37] BlueTarp has conceded that, under the terms of that agreement, it took assignment of customer accounts and, as an assignee, it is subject to Eastern's claims and defenses with respect to defective materials.  *See id*. at 6.[38]  While BlueTarp asserts that it amended the Purchase Card Agreement to eliminate assignments, it failed for various reasons to do so with respect to its agreement with Decoplast.  *See id*. at 6-10.

2.      BlueTarp relies on language in the BlueTarp FAA stating that it "neither sells nor warrants the goods" as evidence of its nonliability for any defective products sold by Decoplast. *See id*. at 10.  Yet, that is not a valid disclaimer of warranties under section 2-316 of the Uniform Commercial Code ("UCC") because it does not mention "merchantability" and is not conspicuous.  *See id*. at 10-11; 11 M.R.S.A. § 2-316.

3.      The BlueTarp FAA, unlike typical commercial finance or credit card transactions, does not contain a "hell or high water clause" providing that Eastern must make payments regardless of defective performance on the part of Decoplast.  *See* Defendant's S/J Opposition at

---

[36] In both its papers and via counsel at oral argument, BlueTarp asserted that Eastern did not oppose dismissal of its counterclaims against BlueTarp.  *See, e.g.*, Plaintiff's S/J Reply at 7.  While, at oral argument, Eastern's counsel did not expressly dispute that characterization, I construe his arguments to address the viability of both BlueTarp's claim against his client and his client's counterclaims against BlueTarp.

[37] Eastern includes, in its brief, assertions of fact that are not set forth in any additional statement of material facts, none having been filed, or even in its responsive statement of material facts.  *Compare* Defendant's Opposing SMF *with, e.g.*, Defendant's S/J Opposition at 2 n.1, 5-6, 8-9, 11-13.  These assertions are not cognizable.  *See, e.g., Pew v. Scopino*, 161 F.R.D. 1, 1 (D. Me. 1995) ("The parties are bound by their [Local Rule 56] Statements of Fact and cannot challenge the court's summary judgment decision based on facts not properly presented therein.").

[38] As noted above, BlueTarp takes issue with this contention.

11.  In any event, such a clause would clash with the assignment and chargeback provisions of BlueTarp's Purchase Card Agreement with Decoplast.  *See id*. at 12.

4.    Under its credit services agreements with Decoplast, BlueTarp's remedy is to obtain full recourse against Decoplast with respect to any funding provided to Decoplast for the defective materials.  *See id*.  In fact, BlueTarp has exercised that remedy, charging back the Eastern account to Decoplast, as a result of which it lacks standing to bring this action.  *See id*. at 12-13.[39]

BlueTarp rejoins that:

1.    Even assuming *arguendo* that the BlueTarp-Decoplast agreement provides for an assignment of Decoplast's Eastern account to BlueTarp, that assignment is irrelevant.  *See* Plaintiff's S/J Reply at 2.  BlueTarp is suing on its direct contract with Eastern, not on any purported assignment from Decoplast.  *See id*.  BlueTarp's direct contract with Eastern, the BlueTarp FAA, is fully integrated and unambiguous.  *See id*. at 3.  The parol evidence rule hence excludes consideration of extrinsic evidence offered to vary or contradict the terms of that direct contract, including evidence concerning the terms of the separate BlueTarp-Decoplast agreement.  *See id*.

---

[39] At oral argument, Eastern's counsel also placed considerable emphasis on a contention that Eastern never became bound by the terms of the BlueTarp FAA because it never used a BlueTarp credit card or access device and never was assigned a BlueTarp account number, thereby failing to satisfy a prerequisite to applicability of the BlueTarp FAA.  As counsel for BlueTarp rejoined at oral argument, Eastern failed to include this point in its brief opposing summary judgment, *see* Defendant's S/J Opposition, and hence waived it, *see, e.g., Pulido*, 566 F.3d at 60 n.4.  While Eastern included the point in support of its denial of some of BlueTarp's statements of material facts, *see* Plaintiff's Opposing SMF ¶¶ 19, 22-23, 25-26, that does not suffice to raise it as a ground of opposition to BlueTarp's motion for summary judgment, *see* Loc. R. 56(c) (contemplating the assertion of facts supported by record citations in support of a denial of a movant's statement of material facts).  In any event, even were the argument cognizable, as noted above in my factual recitation, it rests on a strained interpretation of the underlying contract language.

2.      In any event, BlueTarp amended its contract with Decoplast to eliminate the assignment provision.  *See id*. at 4-6.[40]

3.      The provisions of section 2-316 of the UCC are inapposite.  *See id*. at 6.  UCC Article 2 applies only to sellers of goods.  *See id*.  BlueTarp is not a seller of goods.  *See id*.

4.      The lack of a "hell or high water" clause is neither relevant nor surprising.  *See id*. Caselaw cited by Eastern pertains to leases rather than provision of credit and, more importantly, the clauses require a party to continue to make payments, even if the other party is in breach. *See id*.  No one suggests that BlueTarp is in breach.  *See id*.

5.      Eastern's argument that BlueTarp charged back its entire interest in the Eastern account to Decoplast is wrong.  *See id*. at 7 & n.2.

6.      Under the terms of the integrated, unambiguous FAA, Eastern breached its covenant to pay BlueTarp and cannot assert offsets or counterclaims predicated on the asserted poor quality of the underlying Decoplast goods.  *See id*. at 1-2, 7; Plaintiff's S/J Motion at 12.

### 2.  Relevance of BlueTarp-Decoplast Agreement

For purposes of resolution of the instant motion, I assume *arguendo* that there is at least a triable issue as to whether BlueTarp effectively amended its contract with Decoplast to eliminate assignment of accounts receivable.   I nonetheless conclude that the terms of the BlueTarp-Decoplast agreement are irrelevant.  That is so because:

1.      BlueTarp sues, in the instant one-count complaint, to recover damages on account of Eastern's breach of the BlueTarp FAA.  *See* Complaint ¶¶ 13-24.

---

[40] BlueTarp does not contend that the BlueTarp FAA would foreclose Eastern's assertion of claims, defenses, and offsets arising from the alleged Decoplast product failures if, (i) contrary to BlueTarp's contention that it operated under the new BlueTarp system, it took an assignment of Decoplast's Eastern accounts receivable, and (ii) it chose to pursue any rights arising from such an assignment.  *See* Plaintiff's S/J Reply at 3-4.  However, it correctly notes that it is pressing its rights only under the direct BlueTarp-Eastern agreement, the BlueTarp FAA.  *See id*.

2.      The Commercial Credit Application/BlueTarp FAA provides, "This application and the BlueTarp Financial Account Agreement constitute the complete agreement between you [Eastern] and BlueTarp Financial, Inc."  Plaintiff's SMF ¶ 27; Exh. D to Richardson-Newton Decl. at 1.  Hence, it is a fully integrated agreement.  *See Culebra II, LLC v. River Cruises & Anticipation Yachts, LLC*, 564 F. Supp.2d 70, 80 (D. Me. 2008) ("If the contract's integration clause unambiguously indicates a fully integrated contract, the court should not allow presentation of extrinsic evidence on the question of integration.  The integration clause in the lease for the BLACK PRINCE states: 'Entire Agreement. The terms of this document constitute the entire agreement between the parties, and the parties represent that there are no collateral agreements or side agreements not otherwise provided for within the terms of this agreement.' . . . The integration clause in the lease reflects a fully integrated contract.  Extrinsic evidence to show that it is less than fully integrated is not admissible.") (citations omitted) (applying Maine law).

3.      The BlueTarp FAA states that (i) BlueTarp is extending credit to Eastern, (ii) accounts are closed on the 25th of the month, (iii) payments are due on the 10th day of the following month, (iv) any delinquent balances will be assessed a finance charge of 1.5 percent per billing period and a $29 late fee, and (v) BlueTarp neither sells nor warrants the goods or services obtained from merchants accepting BlueTarp Financial. *See* Plaintiff's SMF ¶¶ 26-30; Exh. D to Richardson-Newton Decl. at 2.

4.      Nothing in the BlueTarp FAA indicates that BlueTarp merely takes assignment of Decoplast's accounts or that the obligation to pay BlueTarp is conditioned in any way on the acceptability of the quality of the goods sold by Decoplast.  In fact, the agreement indicates the

opposite, stating that BlueTarp extends credit to Eastern and that it neither sells nor warrants the goods or services obtained from merchants accepting BlueTarp Financial.  *See id*.[41]

5.     Eastern relies on the terms of a third-party contract extrinsic to the BlueTarp FAA, the BlueTarp-Decoplast agreement, to prove that (i) BlueTarp accepted assignment of Decoplast's accounts rather than extending credit directly to Eastern, and (ii) Eastern's obligation to pay BlueTarp accordingly was subject to claims, defenses, and offsets arising from Decoplast's sale of allegedly defective goods to Eastern.  *See* Defendant's S/J Opposition at 5-10.  In so doing, Eastern in effect offers extrinsic evidence "to vary, add to, or contradict the terms of an integrated written agreement."  *Hemond*, 2008 ME 146, ¶ 13, 956 A.2d at 108 (citation and internal quotation marks omitted).  Such evidence is barred by the parol evidence rule.  *See id*.

6.     Eastern makes no discernible argument that, for purposes of BlueTarp's claim against it or its counterclaims against BlueTarp, an exception to application of the parol evidence rule, such as fraud in the inducement or ambiguity, applies.  *See* Defendant's S/J Opposition at 5-10; *see also Little Caesar Enters., Inc. v. Rooyakker*, Docket No. 283810, 2009 WL 1940563, at *5 (Mich. Ct. App. July 7, 2009) ("[T]o avoid the parol evidence rule, some exception, such as a patent ambiguity or an external fact demonstrating a latent ambiguity, must be shown.") (footnote omitted); *Harriman v. Maddocks*, 518 A.2d 1027, 1030 (Me. 1986) (exceptions to

---

[41] Eastern argues, *inter alia*, that the revision date of September 12, 2006, on the Commercial Credit Application form that it completed, which predates the asserted switch to the new BlueTarp system in January 2007, indicates that the BlueTarp FAA itself is part of the old BlueTarp system, pursuant to which BlueTarp admits it took assignments of dealers' accounts receivable.  *See* Defendant's S/J Opposition at 8.  I attach no particular significance to the revision date in view of the fact that the agreement itself clearly states that BlueTarp extends a line of credit to Eastern.

application of parol evidence rule include asserted invalidity of contract on account of fraud, misrepresentation, or overreaching).[42]

The parol evidence rule hence bars introduction of Eastern's evidence concerning the terms of the Decoplast-BlueTarp agreement.  *See Hemond*, 2008 ME 146, ¶ 13, 956 A.2d at 108.

### 3.  Applicability of UCC Article 2

Eastern's contention that BlueTarp failed to disclaim warranties in accordance with 11 M.R.S.A. § 2-316 likewise misses the mark.  The BlueTarp FAA makes clear that BlueTarp is a provider of credit, not a seller of goods or services.  Article 2 of the UCC is inapposite.  *See, e.g.*, 11 M.R.S.A. § 2-102 (unless context otherwise requires, UCC Article 2 applies to transactions in goods).

### 4.  Relevance of Absence of "Hell or High Water" Clause

Eastern fares no better with its next contention, that BlueTarp's failure to include a "hell or high water" clause in the BlueTarp FAA renders its purported disclaimer of liability for defective products ineffective as a matter of law.  *See* Defendant's S/J Opposition at 11-12.

For this proposition, Eastern cites *Wells Fargo Bank, N.A. v. BrooksAm. Mortgage Corp.*, 419 F.3d 107, 110 (2d Cir. 2005), *Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, No. 05 Civ. 9163 CM MDF, 2006 WL 1982757, at *4 (S.D.N.Y. July 14, 2006), and *Direct Capital Corp. v. New ABI Inc.*, 822 N.Y.S.2d 684, 694 (N.Y. Sup. Ct. 2006).  *See id.* at 11.  Yet, each of these cases concerned (i) a lease arrangement, rather than extension of a line of credit, and

---

[42] Eastern argues, in the main, that BlueTarp took assignment of Decoplast's Eastern account and that, per section 9-1404(1) of Maine's UCC, "[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims . . . the rights of an assignee are subject to . . . any defense or claim in recoupment arising from the transaction that gave rise to the contract[.]"  Defendant's S/J Opposition at 5 (quoting 11 M.R.S.A. § 9-1404(1)).  Yet, Eastern neither explains how the BlueTarp-Decoplast agreement is admissible to vary the terms of its own contract with BlueTarp nor cites authority indicating that, if BlueTarp were shown to be Decoplast's assignee, the provisions of section 9-1404 would in any event trump the provisions of the parties' own integrated agreement.  *See id.* at 5-10.

(ii) the obligation of a lessee to continue making payments to a lessor regardless of the lessor's defective performance. *See Wells Fargo*, 419 F.3d at 110; *Citicorp*, 2006 WL 1982757, at \*4; *Direct Capital*, 822 N.Y.S.2d at 694. Eastern cites no case holding that a hell or high water clause is required to insulate a creditor such as BlueTarp from claims stemming from underlying purchases. In addition, Eastern has alleged no defective performance by BlueTarp.

### 5. Asserted Chargeback of Eastern Account

Eastern finally seeks to avoid summary judgment on the ground that BlueTarp charged back its entire interest in the Decoplast account and hence lacks standing even to maintain the instant action. *See* Defendant's S/J Opposition at 12-13. As noted above in the context of Eastern's motion for summary judgment, BlueTarp has standing to maintain this action on the strength of its own direct contract with Eastern.

### 6. BlueTarp's Entitlement to Summary Judgment

Eastern's attempts to stave off summary judgment having fallen flat, it is apparent that BlueTarp is entitled to prevail. BlueTarp proves that:

1. Its contract extending a line of credit to Eastern requires payment of outstanding balances by the 10th day of the month following issuance of a billing statement, with delinquent balances subject to a finance charge of 1.5 percent per billing period. *See* Plaintiff's SMF ¶¶ 28-29; Exh. D to Richardson-Newton Decl. at 2. Its contract also renders Eastern liable to BlueTarp for all costs and expenses, including late charges and reasonable attorney fees or other costs of collection, in the event of a breach or default of Eastern's contractual duties. *See* Plaintiff's SMF ¶ 31; Exh. D to Richardson-Newton Decl. at 2.

2. Eastern has failed to pay BlueTarp for $168,117.24 in charges for which BlueTarp has paid Decoplast. *See* Plaintiff's SMF ¶ 47; Richardson-Newton Decl. ¶ 38.

3.      As of May 20, 2009, finances charges on that amount from the June 9, 2008, due date at 1.5 percent per month totaled $28,602.96.  *See* Plaintiff's SMF ¶ 48; Richardson-Newton Decl. ¶ 39.

BlueTarp hence is entitled to summary judgment on its breach of contract claim, see *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250 (to prevail on a breach of contract action, a plaintiff must establish "(1) breach of a material contract term; (2) causation; and (3) damages"), as well as partial summary judgment as to its claimed damages of (i) $168,117.24 in charges for which BlueTarp has paid Decoplast, and Eastern has not paid BlueTarp, (ii) finance charges thereon accruing at the rate of 1.5 percent per month since the due date of June 9, 2008, and (iii) reasonable attorney fees incurred as a result of Eastern's breach with respect to those amounts.[43]

BlueTarp also demonstrates its entitlement to summary judgment as to Eastern's counterclaims.  The integrated, unambiguous BlueTarp FAA makes clear that BlueTarp extends a line of credit to Eastern for purchases from Decoplast, is not a seller of the underlying goods, and does not warrant their quality.  *See* Plaintiff's SMF ¶¶ 28, 30; Exh. D to Richardson-Newton Decl. at 2.  This, coupled with the agreement's unconditional obligation to pay balances due and owing, *see* Plaintiff's SMF ¶ 29; Exh. D to Richardson-Newton Decl. at 2, makes clear that BlueTarp is not subject to offsets and counterclaims arising from Decoplast's sale to Eastern of allegedly defective plaster.

---

[43] At oral argument, BlueTarp's counsel confirmed that my characterization, above, of the nature of damages with respect to which his client seeks partial summary judgment is correct.  BlueTarp states in a footnote: "This motion does not resolve all issues in this case.  BlueTarp has approved additional [Eastern] charges beyond the ones for which it has already advanced monies to Decoplast.  BlueTarp is entitled to the profits it would have made on those additional approved charges, plus contractual interest and attorneys' fees.  BlueTarp does not raise those issues in this motion."  Plaintiff's S/J Motion at 12 n.4.

## IV.  Conclusion

For the foregoing reasons, I recommend that BlueTarp's motion for summary judgment

be **GRANTED** and that of Eastern be **DENIED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 24th day of July, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge